

FILED

AUG 2 1 2017

CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DOUGLAS RAHM, | \* | CIV 17-4018 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| vs. | \* | MEMORANDUM OPINION AND |
| | \* | ORDER GRANTING MOTION TO |
| TCF NATIONAL BANK, | \* | COMPEL ARBITRATION |
| | \* | |
| Defendant. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff, Douglas Rahm ("Rahm"), claims he suffered retaliation by his former employer, TCF National Bank ("TCF"), when he was fired for reporting sexual harassment allegations made by a female coworker at TCF, and for supporting her in the investigation of those claims. Rahm also alleges that TCF fired him because he was approaching retirement age. He seeks relief under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the South Dakota Human Rights Act. He also asserts claim for wrongful termination and intentional infliction of emotional distress. TCF moves to compel arbitration of Rahm's claims. (Doc. 11.) Rahm resists the motion. For the following reasons, the motion to compel arbitration will be granted, and the case will be stayed pending arbitration.

## BACKGROUND

The parties generally agree to the core facts in this case which, taken in the light most favorable to Rahm, are as follows:

TCF is a national banking association wholly-owned by TCF Financial Corporation. On October 30, 2011, Rahm applied online for an Operations Manager position that was posted on a website called Careerbuilder.com. Rahm did not know he was applying to TCF because TCF did not disclose its identity when it advertised for the Operations Manager position on Careerbuilder.com.

Rahm submitted a cover letter and resume through Careerbuilder.com. He did not agree to arbitration of any disputes at that time.

Later in the day on October 30, 2011, Rahm applied directly to TCF for an Investigator Position through Careerbuilder.com by filling out an online employment application. TCF has submitted a document showing that Rahm electronically signed the job application at 7:16 PM on October 30, 2011. (Doc. 13-2.) TCF also has submitted a copy of the relevant language from the e-Signature Statement in TCF's employment application, showing the terms to which applicants agree by electronically signing the application.[1] TCF does not require employees to have completed an

---

[1]The description of TCF's Dispute Resolution Policy in the e-Signature Statement provides: By applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy ("DRP"). This means that you and TCF will not have a right to bring a lawsuit against one another or have a jury trial regarding Covered Claims. The term "TCF" includes TCF National Bank and certain of its subsidiaries and affiliates. Except as otherwise specified in the DRP, the term "covered Claim" includes any legal disputes and controversies between you and TCF that related to or arise from the employment relationship, a request for employment, or the DRP. Under this DRP, you and TCF will not have the right to consolidate covered claims or to participate as a representative or member of any class of persons or as a private attorney general, in any lawsuit or arbitration concerning any Covered Claim. You have the right to reject arbitration by giving a written rejection notice within the following time frames. If you apply for a job with TCF and are not hired, you must give notice no later than 60 days after the date you submitted your application to TCF (whether or not TCF has made a decision on your application within this time frame.) If you are hired, you must give notice no later than 60 calendar days after your start date. If you reject arbitration within these time frames, neither you nor TCF are required to submit a Covered Claim to final and binding arbitration. To reject arbitration, you must give a written rejection notice to: TCF Financial Corporation, Attn Director of Corporate Human Resources, 150 Lake Street West, Suite 102, Mail Code LSW-01-H, Wayzata, MN 55391. Notice must be sent by regular U.S. Mail, certified U.S. mail – return receipt requested, or overnight delivery service, or you may hand deliver the notice. You must sign the notice, and the notice must include your name, home address and a clear statement that you reject arbitration.
The Dispute Resolution Policy Disclosure above is just a short description of the DRP. You acknowledge receiving a complete copy of the entire DRP. You may also obtain a copy of the DRP by clicking here or by requesting a copy in writing from the Director or Corporate Human Resources at the mailing address above.
By electronically signing below, you agree to the foregoing and that you will be

employment application for the specific TCF position they were offered or hold; it simply requires that employees have completed at least one TCF application. (Doc. 21, ¶ 4.) The application is used by TCF "to consider candidates for whatever open position TCF thinks may be the best match with the candidate, consistent with the candidate's qualifications and interest. (*Id.* at ¶ 5.) TCF's online employment application states, in part, "You acknowledge that you understand TCF may consider you for a position other than the position you directly applied for, and that your electronic consent below will also be binding to that position." (*Id.* at ¶ 2 and Exhibit A.)

On November 14, 2011, a recruiting manager for TCF contacted Rahm regarding the resume that he submitted for the Operations Manager position. This was the first time he became aware that the Operations Manager job was with TCF. Later in November of 2011, Rahm was offered and accepted the Operations Manager position. The Dispute Resolution Policy ("DRP") was not mentioned to him in the oral or written communications regarding that particular position. Rahm says that he informally began working for TCF on December 13, 2011, and that his formal start date was January 2, 2012.

In addition to electronically signing the e-Signature Statement which states, in part, "By applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy," on approximately December 24, 2011, TCF provided Rahm a copy of its Employee Policy Highlights ("Policy Highlights"). The thirty-nine page Policy Highlights provides a three-page summary of the DRP. (Doc. 21, Ex. B.) The second-to-last page of the Policy Highlights is an Acknowledgment of Receipt in which the recipient confirms that he will read TCF's policies. The Acknowledgment states, "I acknowledge receipt of copies of the TCF National Bank Employee Policy Highlights. I understand that it is my responsibility to read the material and become familiar with the policies explained since

---

bound by the rules, policies and regulation of TCF, which can be changed from time to time with or without notice to you.
In addition, you agree that disclosures relating to your Application with TCF may be provided in electronic form.

(Doc. 21-1, Ex. A.)

I will be expected to comply with them." *Id.* The three page DRP section of the Policy Highlights explains the process for handling of disputes, describes an employee's "Right to Reject Arbitration," and states that "the entire TCF Dispute Resolution Policy is available for viewing on the company's intranet" *Id.* On December 26, 2011, Rahm acknowledged receipt of the Policy Highlights. (*See* Doc. 13-3.) The DRP allows employees to opt out of binding arbitration during their first sixty days of employment. (Doc. 13, ¶ 5.) Rahm had sixty days from his start date on January 2, 2012, to reject the arbitration agreement, but he did not.

Rahm alleges that, on June 22, 2015, a TCF employee reported to him that she was being stalked and harassed by other TCF employees. (*See* Complaint, Doc. 1 at ¶ 14.) The Complaint describes the actions Rahm took to address these allegations starting in June 2015 and continuing through September 2015. On September 16, 2015, Rahm's employment with TCF was terminated.

On February 13, 2017, Rahm filed a six-count Complaint against TCF for retaliation, age discrimination, wrongful termination and intentional infliction of emotional distress. On May 5, 2017, TCF filed the current motion requesting the Court to compel arbitration of all counts pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Rahm's main argument opposing arbitration is that TCF hired him for the Operations Manager position and not the Investigator position. Because he agreed to arbitration only when he applied for the Investigator position, Rahm asserts that he is not contractually bound to arbitrate the claims arising from termination of his employment as the Operations Manager.

## STANDARD OF REVIEW

The Federal Arbitration Act does not identify what evidentiary standard a party seeking to avoid arbitration must meet. *Neb. Mach. Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741-42 (8th Cir. 2014); *see also Henry Techs. Holdings, LLC v. Giordano*, 2014 WL 3845870, at *3 (W.D. Wis. Aug. 5, 2014) ("The FAA does not define a standard for a district court's determination of a motion to compel arbitration[.]"). Courts that have addressed the issue have used a summary judgment standard. *Id.*; *see also Schwalm v. TCF Nat'l Bank*, 226 F.Supp.3d 937, 940 (D.S.D. 2016); *Technetronics, Inc. v. Leybold-Graeus GmbH*, 1993 WL 197028, at *2 (E.D. Pa. June 9, 1993) ("[I]n a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the

district court is the same standard used in resolving summary judgment motions pursuant to [Federal Rule of Civil Procedure] 56(c).”). Therefore, the court may consider all evidence in the record, viewing that evidence in the light most favorable to the non-moving party. *Id.*; *see also Lee v. Credit Acceptance Corp.*, 2015 WL 7176374, at *1 (W.D. Wis. Nov. 12, 2015).

## DISCUSSION

As an initial matter, the Court will grant Rahm's motion to take judicial notice of filings in the case of *Schwalm v. TCF Nat'l Bank*, CIV 16-4074. *See Kern v. Tri–State Ins. Co.*, 386 F.2d 754, 755-56 (8th Cir. 1967) (district court may take judicial notice of other proceedings in same court).

Both state and federal governments have strong policies favoring arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) (“We have consistently favored the resolution of disputes by arbitration.”). Questions of arbitration are governed by the Federal Arbitration Act (or “FAA”), 9 U.S.C. § 1 *et seq.* The FAA was enacted to “reverse the longstanding judicial hostility to arbitration agreements” and treat arbitration agreements like any other contract. *Green Tree*, 531 U.S. at 89. South Dakota has adopted the Uniform Arbitration Act. *See* SDCL 21-25A-1, which provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives.

SDCL § 21-25A-1.

The FAA “provides that written agreements to arbitrate controversies arising out of an existing contract ‘shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.’ ” *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA “mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.” *Id.* (citing 9 U.S.C. §§ 3, 4). The “court's role under the FAA is therefore limited to determining (1) whether

a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

The DRP contains a broad arbitration clause that applies to all claims between an employee and TCF "that relate to or arise from the employment relationship." (Doc. 14-1 at p. 2.) Rahm does not contest that his claims fall within the scope of the arbitration agreement.[2] Rather, Rahm argues that the agreement to arbitrate is not valid. Thus, the only issue before the Court concerns the validity of the arbitration agreement. Whether there is a binding arbitration agreement is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). In examining whether the parties agreed to arbitrate, courts must ordinarily apply "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

In the present case, the question whether the parties formed a valid agreement to arbitrate is governed by the contract law of South Dakota. South Dakota courts apply ordinary contract principles to arbitration agreements. *Masteller v. Champion Home Builders, Co.*, 723 N.W.2d 561, 564 (S.D. 2006). The required elements to form a valid contract in South Dakota are (1) parties

---

[2] The DRP explicitly states that it covers claims including, but not limited to:

1. Claims relating to involuntary termination, such as layoffs and discharges (including constructive discharges);
2. Employment discrimination and harassment claims, based on age ... (including, but not limited to, claims pursuant to the Civil Rights Acts of 1866, 1964, and 1991, the Age Discrimination in Employment Act and the Americans with Disabilities Act);
3. Retaliation claims for legally protected activity and/or whistleblowing ...;
                                    ***
8. Tort claims, including but not limited to ... infliction of emotional distress.

(Doc. 14-1 at p. 2-3.)

capable of contracting; (2) their consent; (3) a lawful purpose; and (4) sufficient consideration. *Setliff v. Akins*, 616 N.W.2d 878 (S.D. 2000) (citing SDCL § 53-1-2). Rahm does not contest that all of the elements to form a valid contract were present when he electronically signed the agreement to arbitrate at the time he applied online for the Investigator position, and the Court finds that the parties entered into a valid contract.

Rahm presents three basic arguments that target whether he is required to arbitrate the claims in this case. Rahm argues that the only time he agreed to the DRP was when he applied for the Investigator position for which he was not hired and, therefore, the agreement to arbitrate does not apply to the Operations Manager position. Rahm also argues that the DRP is ambiguous and should be construed against TCF. Finally, Rahm asserts that the employee Policy Highlights Manual and the Acknowledgment of Receipt are not contracts binding Rahm to the DRP.

1. Employment as Operations Manager

In support of his first argument, Rahm contends that he had a "meeting of the minds" with TCF regarding the Operations Manager position which did not include arbitration, and TCF cannot modify that agreement with the arbitration clause he signed while applying for the Investigator position. In support of this argument, Rahm relies on *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 891 F.Supp.2d 1088 (D.S.D. 2012), and *Masteller v. Champion Home Builders, Co.*, *supra*. The parties in *Tromley* and *Masteller* originally agreed to a contract without an arbitration clause. Subsequently, one of the parties to the contract attempted to revise the contract to include an arbitration agreement. The courts in *Tromley* and *Masteller* held that the post-contractual attempts to add an arbitration agreement to the initial contract did not provide reasonable notice that an arbitration agreement was to be made part of the contract. Thus the parties were not bound by the arbitration agreement.

*Tromley* and *Masteller* are inapposite because, first, TCF did not attempt to add an arbitration agreement to an existing contract with Rahm. Rather, prior to going to work at TCF, Rahm agreed that if hired by TCF they would arbitrate certain issues if a dispute arose. Rahm signed the arbitration agreement in October of 2011, *before* he accepted employment with TCF in November of 2011. Furthermore, unlike in *Tromley* and *Masteller*, TCF provided reasonable notice that an

arbitration agreement was to be part of Rahm's employment with the company unless he opted out of arbitration during the sixty day time period. On October 30, 2011, when Rahm filled out and electronically signed his online employment application with TCF, an application that he knew was for a job with TCF, Rahm was provided with an explanation of the DRP. The first sentence states that "[b]y applying for employment or accepting employment, you agree with TCF and TCF agrees with you to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy (DRP)." The online application further explains that an e-Signature on the application binds a person to this agreement. Accordingly, Rahm agreed to and is bound to arbitrate disputes arising out of his employment with TCF. *See Schwalm*, 226 F.Supp.3d at 940 (holding that "if a person applies to a position at TCF, they are consenting to be bound by the DRP in consideration for TCF accepting their application").

Rahm cites no authority indicating that consent to arbitrate is not binding if an employee is hired for a different position than they applied for. The *Schwalm* court considered and rejected such an argument:

> Schwalm's argument that the job described in the November 26 application is not the same job she eventually received is irrelevant to the question of whether she is bound by the DRP. The language in the DRP on the November 26 application states "by applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy." Docket 8–1 at 12. Thus, Schwalm's agreement to be bound by the DRP occurred once she applied for the job regardless of whether she actually received that job. Further, the application also clearly states that "TCF may consider you for a position other than the position you directly applied for, and ... your electronic consent below will also be binding to that position." Docket 8–1 at 12.

*Schwalm*, 226 F.Supp.3d at 941-42. In fact, courts have enforced arbitration agreements included in employment applications even if the applicant was never hired for any position. *See, e.g., Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998) (unsuccessful job applicant bound by arbitration agreement in employment application).

For all of these reasons, the Court rejects Rahm's first argument that the agreement to arbitrate would apply only if TCF had hired Rahm for the Investigator position.

## 2. Ambiguity

Rahm's next argument is that the description of the arbitration agreement in the employment application that he electronically signed is ambiguous because the E-Statement provides both that it is not a contract for employment or any other benefit, and that "[b]y applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy." (Doc. 19-1 at p. 12.)

The Court adheres to the following principles of South Dakota law when construing a contract:

> When construing a contract, the court must ascertain and give effect to the intention of the parties. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985). That intention is found in the contract language. *Id.* Unless the language is ambiguous or a different intention is manifested, the language in a contract is to be given its plain and ordinary meaning. *See* Restatement (Second) of Contracts § 202(3) (1981). Whether contract language is ambiguous is a question of law. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149 (S.D. 1986). Language is ambiguous when a genuine uncertainty exists as to which of two or more meanings is correct. *North River Ins. Co. v. Golden Rule Constr., Inc.*, 296 N.W.2d 910 (S.D. 1980).
>
> *American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D. 1990).

This Court does not find the arbitration agreement in TCF's employment application to be ambiguous. Stating that the employment application is not an employment contract or any other benefit does not contradict or negate the agreement to arbitrate disputes arising out of an employment relationship. The language is clear and unambiguous. The arbitration agreement obviously relates to the future possibility of employment and, in the event of employment, to employment-related disputes. The fact that the employment application did not constitute an employment contract does not undermine the express agreement to resolve claims pursuant to the DRP. Rahm's argument that the DRP is ambiguous because the e-Signature Statement does not define "benefit," yet the DRP uses the term "for the benefit of" is equally unavailing.

## 3. Employee Policy Highlights Manual and Employee Acknowledgment of Receipt

Rahm's final argument that the Employee Policy Highlights Manual and Employee Acknowledgment of Receipt are not contracts binding Rahm to submit his claims to arbitration is easily resolved because TCF agrees with Rahm on this issue. (Reply Brief, doc. 20 at 7.) TCF

admits that the Policy Highlights booklet acts as a reminder to employees that they agreed to the terms of the DRP, and that they have the right to opt out of the DRP's arbitration provision during their first 60 days of employment. (*Id.*) The Court agrees with the parties that the Policy Highlights and the Acknowledgment of Receipt are not contracts creating an agreement to arbitrate. This does not change the fact that Rahm is bound by the arbitration agreement as explained above.

## CONCLUSION

For the foregoing reasons, the Court finds Rahm has agreed to arbitrate his claims, and he must be compelled to do so.

The Court has discretion to stay or dismiss the instant case. *See* 9 U.S.C. § 3 (mandating courts to stay proceedings pending completion of arbitration); *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766 (8th Cir. 2011) (noting that the district court in dismissing the underlying action had relied upon a "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration"). TCF requests dismissal because all of Rahm's claims are covered by the DRP. (Doc. 12 at 6.) Rahm lists a number of reasons that the case should be stayed rather than dismissed if the motion to compel is granted. (Doc. 17 at 21-22). The Court finds that staying rather than dismissing this case will promote judicial economy. Accordingly,

IT IS ORDERED:
1. That Plaintiff's Motion to Take Judicial Notice, Doc. 19, is granted; and

2. That Defendant's Motion to Compel Arbitration, Doc. 11, is granted, and this action is STAYED pending arbitration.

Dated this 21st day of August, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _Summer Wahlgren_
(SEAL)        DEPUTY